# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **OWEN MASON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 3:19-cv-01899 (VLB)** |
| | : | |
| **GEORGE CRUZ et al.,** | : | |
| **Defendants.** | : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

On December 2, 2019, Plaintiff Owen Mason, an unsentenced[1] inmate currently in the custody of the Connecticut Department of Correction ("DOC"), brought a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Defendants Correction Officer George Cruz, Hartford Correctional Center ("HCC") Warden McCormack, Correctional Counselor E. Tugie, Investigator Leone, Director of Classification and Population Management David Maiga, Lieutenant Betances, and Deputy Commissioner Angel Quiros, in their individual and official capacities.  Compl. [ECF No. 1].  Plaintiff alleged violation of his rights under the Fourth, Eighth, and Fourteenth Amendment of the United States Constitution. Plaintiff sought damages, injunctive relief, and unspecified declaratory relief.

On initial review, the Court permitted Plaintiff's Fourteenth Amendment excessive force and his Fourteenth Amendment procedural and substantive due

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).  At this writing, the Connecticut Department of Correction website shows that Plaintiff is an unsentenced inmate housed at the Corrigan-Radgowski Correctional Center ("Corrigan").

process and equal protection claims to proceed.  Initial Review Order [ECF No. 7 at 16-17].

Defendants have filed a motion for summary judgment on the complaint in its entirety.  Mot. for Summary Judgment [ECF No. 36].  In support of their motion, Defendants have submitted a memorandum of law [ECF No. 36-1] and a Rule 56(a)1 Statement of Facts [ECF No. 36-6] with exhibits.   In response to this Court's order for further briefing, Defendants have also submitted a supplemental memorandum [ECF No. 42] and a supplemental Statement of Facts [ECF No. 42-1] with exhibits.  Plaintiff has filed opposition memoranda [ECF Nos. 43, 45-1], Rule 56(a)2 Statements of Facts [ECF Nos. 44, 45-1] and exhibits.

For the following reasons, the Court will grant the motion for summary judgment.

## I. FACTS[2]

---

*See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=327288.

[2] Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."  Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."  Defendants informed Plaintiff of this requirement in a *Notice to Pro Se Litigant*.  [ECF No. 36-7].  The Court may also consider the allegations of the verified complaint in reviewing the motion for summary judgment.  *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019).

The record—consisting of the complaint, statements of facts, and supporting exhibits submitted by the parties—reflects the following factual background to this case.

### 1. Facts relevant to Plaintiff's Disciplinary Report, Hearing and Administrative Segregation Placement

At all times relevant to this complaint, Plaintiff was an unsentenced pretrial detainee.   Compl. [ECF No. 1 ¶ 2]. On September 15, 2019, while detained at Hartford Correctional Center ("HCC"), Plaintiff received a Disciplinary Report ("DR") charging him with Assault on a DOC employee due to an incident that occurred on that same day.  *Id.* ¶¶ 20, 22; Defs.' ex. C, Betances declar. [ECF No. 36-4 at 7].

The Disciplinary Report issued by Defendant Cruz represented the following.  Plaintiff confronted Cruz and "got into [Cruz's] personal space" while in the doorway of the East 1 stairwell.  *Id.*  After Plaintiff failed to comply with Cruz's order consisting of "loud verbal direction for [him] to step back" and continued to "get closer[,]" Officer Cruz "push[ed]" him "back and away."  *Id.*  Thereafter, Plaintiff "responded by punching [Cruz] in the face" and then "ran off" while Cruz called a "Code Orange via Radio."  *Id.*  This Disciplinary Report was delivered to Plaintiff that evening at 10:00 PM.  *Id.*

A Disciplinary Investigation Report indicates that Plaintiff was informed of the process of investigation and hearing and that he represented that Officer Cruz set him up by opening doors "that should have been secured and left his post to

confront [Plaintiff] in a stairwell that was off camera." *Id.* at 9.  The Disciplinary

Investigation Report also reflects that Plaintiff declined to request any witnesses

and verbally declined to sign the report.  *Id.*  In summarizing the facts underlying

the incident, the Disciplinary Investigator Leone stated:

> I/M Mason was upset that other inmates got out to the phone before
> he did.  Officer Cruz unsecured several doors to the tiers in order to
> conduct a tour when I/M Mason confronted him in the unit stairwell.
> Verbal direction was given to I/M Mason by Officer Cruz to exit the
> stairwell and cease his agitated demeanor.  I/M Mason continued to
> close space with Officer Cruz who then pushed I/M mason
> backwards in order to create space to utilize his radio to ask for
> assistance.  I/M Mason came back at the officer with a strike between
> the nose and ear of the left side of Officer Cruz's face.  I/M Mason
> retreated as Officer Cruz called a Code Orange.

*Id.* at 10.   Leone noted that he reviewed the video requested by Plaintiff for

preservation but that this video did not depict the actual incident at issue in this

case.  *Id.*  He recommended a guilty finding on the disciplinary report.  *Id.*

An Inmate Interview Statement dated September 23, 2019 (reflecting

Plaintiff's version of the incident) claims that Correction Officer Cruz told Plaintiff

to come into the stairwell and that Cruz subsequently assaulted him.  *Id.* at 12-13.

Plaintiff provided his advisor CCT Saunders with a statement describing his

version of the events resulting in his disciplinary charge.[3]  *Id.* at 15.

On September 24, 2019, Plaintiff received notice that he was being

considered for Administrative Segregation Program placement.  Defs.' Rule 56(a)

---

[3] The Advisor Report dated October 2, 2019 also indicates that the evidence was
reviewed with Plaintiff and that he "did not request video."  *Id.* at 16.

4

Stmt. [ECF No. 36-6 ¶ 12].  The Administrative Segregation hearing was held on September 27, 2019.  *Id.* ¶ 13.  Plaintiff appeared at the hearing and presented his opposition to his placement in the Administrative Segregation Program and had the opportunity to present his own statement, witnesses, and evidence.  *Id.* ¶¶ 14-15.  Plaintiff was also provided the opportunity to have an advisor for the hearing.  Defs.' ex. D, Tugie declar. [ECF No. 36-5 ¶ 6, p. 4].

In a decision dated October 8, 2019, Hearing Officer Tugie recommended Plaintiff's placement in the Administrative Segregation Program, which was authorized by Director Maiga.  Defs.' Rule 56(a) Stmt. [ECF No. 36-6 ¶ 16]; Defs. ex. D, Tugie declar. [ECF No. 36-5 ¶ 10].  On October 10, 2019, Plaintiff received written notice of this decision and of his right to appeal that decision.  Defs.' Rule 56(a) Stmt. [ECF No. 36-6 ¶ 17].

On October 9, 2019, Plaintiff pleaded not guilty to the disciplinary charge and had the opportunity to contest the charge by presenting his own statement, witnesses and evidence at the hearing before Lieutenant Betances.  Defs.' Rule 56(a) Stmt. [ECF No. 36-6 ¶ 9]; Defs.' ex. C, Betances declar. [ECF No. 36-4 ¶ 6].  The Incident Report, Plaintiff's statement, a video summary, the Advisor Report, and a Medical Incident Report were all submitted as evidence at the hearing on October 9, 2019.  *Id.* ¶¶ 11, 14.

Following the hearing, in a decision dated October 9, Lieutenant Betances found Plaintiff guilty of the Disciplinary Report charge.  *Id.* ¶ 15, p. 5.  In the

Disciplinary Process Summary Report, Betances stated that the incident report "notates the inmate appeared agitated when he exited his cell supposedly due to other inmates being allowed to use the phone before him[,]" and that "the inmate approached the officer in the stairwell where he punched the officer in the face and then ran away." *Id.* at 6.  The decision stated that the record showed the officer involved "was noted as having … injuries consistent with being punched" while Plaintiff was noted as having no injuries.  *Id.*  Plaintiff received written notice of the decision and his right to appeal.  Defs.' Rule 56(a) Stmt. [ECF No. 36-6 ¶ 11].  As a result of the guilty finding on the Disciplinary Report, Plaintiff received the sanctions of 30 days of punitive segregation, 90 days of Loss of Phone, and 60 days loss of visitation.  Defs.' ex. C, Betances declar. [ECF No. 36-4 at 5].

All DOC inmates in restrictive housing are housed according to the standards set forth in DOC Restrictive Status Administrative Directive 9.4 and Attachment A/1.  Defs.' Supp. Facts [ECF No. 42-1 ¶ 1].  Administrative Directive 9.4 states that DOC provides "restrictive conditions as required to preserve the order, safety, and security of facilities to comply with the law, and to manage inmate behavior."  A.D. 9.4 § 1.  Director Maiga's declaration explains that the general objective for the restrictive housing is to deter problematic inmates and motivate better behavior by providing incentives for the inmate to progress out of the restrictive conditions.  Maiga declar. [ECF No. 42-2 ¶ 4].  In a declaration,

6

Captain Chevalier, the Unit Manager during Plaintiff's incarceration in Administrative Segregation at the Northern Correctional Institution ("Northern"), represents that there is no basis for Plaintiff's complaint about inadequate ventilation, plumbing, and food. Chevalier declar. [ECF No. 42-5 ¶¶ 2, 4].

Plaintiff received all of the programs and recreation associated with the Administrative Segregation program. Defs.' Supp. Facts [ECF No. 42-1 ¶ 7].

### 2. Facts Relevant to Plaintiff's Exhaustion of Administrative Remedies

On October 9, 2019, Plaintiff filed a Level 1 Grievance while at Northern concerning the alleged assault on him by Officer Cruz on September 15, 2019; it requested suspension of Officer Cruz. Defs.' ex. B, Saunders declar. [ECF No. 36-3 ¶ 5, p. 4]. This Level-1 Grievance was denied on November 21, 2019 for the stated reasons that inmates do not "dictate staff discipline" and there was no evidence to support Plaintiff's assertion that Officer Cruz assaulted him. *Id.*

On November 26, 2019, Plaintiff filed a Level-2 Grievance, complaining that he had not received a response to his Level-1 Grievance. *Id.* ¶ 9, p. 5. Northern Administrative Remedies Coordinator Saunders sent Plaintiff a memo dated November 27, 2019, stating that his Level-2 Grievance was being returned and the Level 1 Grievance had been disposed of on November 21, 2019. *Id.* ¶ 10, p. 6. Saunders also provided a copy of the Level-1 Grievance response. *Id.*

Plaintiff avers that a Northern correctional staff member handed him a copy of the Level-1 Grievance response at 10:00 AM on November 27, 2019, and that he

7

then submitted a Level-2 Grievance to appeal the denial of his Grievance.  Pl.'s ex. A, Mason Aff. [ECF No. 45-1 at 24 ¶ 4].  He explains further that he received a visit later that day from Saunders, who delivered her memo and a copy of the Level-1 Grievance with the disposition dated November 21, 2019.  *Id.* ¶ 5.  He states that he informed her that he was not receiving his grievances in a timely manner and that he submitted two Level-2 Grievances, one which addressed the lack of response to his Level-1 Grievance; and the other that he submitted in response to his Level-1 Grievance disposition that he just received that day.  *Id.* ¶ 6.

Grievance Counselor Saunders avers that Plaintiff received a copy of the Level-1 Grievance response shortly after November 21, 2019; however, Saunders has not provided any evidence substantiating her assertion.  *See* Defs.' ex. B, Saunders declar. [ECF No. 36-3 ¶ 8].  However, both parties appear to agree that Plaintiff received two copies of the Level-1 grievance disposition prior to November 28, 2019.  Defs.' Rule 56(a) Stmt. [ECF No. 36-6 ¶ 4].

Plaintiff avers that due to the Thanksgiving holiday and confusion with the delivery of Grievances, he submitted another Level-2 Grievance dated December 4, 2019.  Pl.'s ex. A, Mason Aff. [ECF No. 45-1 at 25, ¶ 7].  On February 14, 2020, Plaintiff's Level-2 Grievance dated December 4, 2019 was rejected on the basis that it was not filed within five days from receipt of the Level-1 Disposition.  Defs.'

Rule 56(a) Stmt. [ECF No. 36-6 ¶ 4]; Defs.' ex. B, Saunders declar. [ECF No. 36-3 at 7].

Plaintiff has submitted a copy of a Level-2 Grievance dated November 26, 2019 appealing the Level-1 decision; this Level-2 Grievance, which indicates in the "Date Received" box that it was received on January 10, 2020, was rejected on February 14, 2020.   Pl.'s Aff., ex. A [ECF No. 45-2 at 1].   The disposition explained that Plaintiff had five days from receipt of his Level-1 disposition to submit his Level-2 Grievance, but his Level-2 Grievance was received by the Northern administrative remedies coordinator on December 11, 2019.   *Id.*   The box indicating exhaustion of administrative remedies was checked.   *Id.*   Plaintiff later received a letter dated March 5, 2020, from Sharonda Carlos, Acting District Administrator, who stated that Plaintiff could not file a Level-3 appeal of his Level-2 disposition and that he had "exhausted the Department's Administrative Remedies."   *Id.* at 5 (emphasis in original).

Plaintiff has also submitted his inmate request and Level-1 Grievance regarding his confinement in the Administrative Segregation Program.   In an inmate request to non-defendant Captain Chevalier, Plaintiff stated: "I would like to know what is the justification for placing me in long term isolation as a pre-trial detainee, and subjected to harsher conditions than former death row inmates and other deemed not fit for population as well as putting me on a punitive status as pre-trial detainee?"   Pl.'s Supp. Facts [ECF No. 45-1 at 30].   In his Level-1

Grievance dated December 17, 2019, he complained that Warden McCormack and the Northern Warden "and others continue to violate my constitutional rights as a pre-trial detainee" because he "should not be placed in long term isolation" and "Administrative Segregation is being employed punitively." *Id.* at 3. This grievance was rejected on December 26, 2019 without disposition; the response indicated that Plaintiff had previously filed an appeal of his Administrative Segregation placement, which was denied on October 28, 2019, and was not subject to further appeal. *Id.*

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at \*4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb*, 84 F.3d at 518. Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

### III. DISCUSSION

Defendants maintain that Plaintiff's Fourteenth Amendment excessive force claim is unexhausted under the procedures set forth in Administrative

11

Directive 9.6 in compliance with the Prison Litigation Reform Act ("PLRA") and that Plaintiff cannot demonstrate, as a matter of law, any violation of his Fourteenth Amendment due process and substantive due process and equal protection rights.  The Court will first consider the issue of exhaustion under the PLRA.

      A.    <u>Exhaustion of Administrative Remedies</u>

The PLRA requires prisoners to exhaust available administrative remedies before filing a federal lawsuit regarding prison conditions.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

A claim is not exhausted until the inmate complies with all administrative deadlines and procedures.  *See Woodford v. Ngo*, 548 U.S. 81, 90–93 (2006).  A prisoner who does not complete the exhaustion process until after filing a federal lawsuit has not satisfied the exhaustion requirement.  See *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is

insufficient."), *overruled on other gnds., Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-cv-00903 (SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019).

The exhaustion requirement may be excused when a remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three kinds of circumstances in which an administrative remedy might be unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

13

Administrative Directive 9.6 "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]"   A.D. 9.6(1).   Because his claims concern custody staff members' use of excessive force, Plaintiff was obligated to exhaust his administrative remedies under Administrative Directive 9.6.   *See Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (affirming district court's dismissal based on inmate's failure to exhaust his claim of correction officer's use of excessive force under Administrative Directive 9.6).   "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."   *Bock*, 549 U.S. at 218.

Administrative Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance.   A.D. 9.6(6)(A).   It provides that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue."   *Id.*   Administrative Directive 9.6(6)(C) specifically states that the inmate must include a copy of the Inmate Request Form (CN 9601) with the grievance (CN 9602) or an inmate must explain its absence.

The Level-1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance.   *See* A.D. 9.6(6)(C).   The Unit Administrator shall respond in writing to the Level-1 Grievance within thirty business days of his or her receipt of the Grievance.   *See*

14

A.D. 9.6(6)(I).  The inmate may appeal the disposition of the Level-1 Grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level-2.  *See* A.D. 9.6(6)(G), (I) & (K).  A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed.  *See* A.D. 9.6(6)(G).

A Level-2 Grievance of a disposition of a Level-1 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level-1 Grievance, and the Level-2 reviewer shall provide a written response within thirty business days of receipt of the Level-2 Grievance.  See A.D. 9.6(6)(K).  A Level-2 Grievance of the Unit Administrator's failure to dispose of the Level-1 Grievance in a timely manner must be filed within 65 days from the date the Level-1 Grievance was filed by the inmate.  *See* A.D. 9.6(6)(M).  Level-2 Grievances from inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator.  *See* A.D. 9.6(6)(K)(1).

Level-3 Grievances are restricted to challenges to department policy, the integrity of the grievance procedure or Level-2 Grievances to which there has been an untimely response by the District Administrator.  *See* A.D. 9.6(6)(L).  A Level-3 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level-2 Grievance.  *See id.*  A Level-3 Grievance of the District Administrator's failure to dispose of the Level-2 Grievance in a timely

manner must be filed within 35 days of the filing of the Level-2 Grievance.  *See* A.D. 9.6(6)(M).    A Level-3 Grievance is reviewed by the Commissioner of Correction or his or her designee.  *See* A.D. 9.6(6)(L).

Defendants argue that Plaintiff failed to exhaust his excessive force claim against Officer Cruz because he failed to file his Level-2 Grievance within five days of the receipt of the Level-1 disposition as required under A.D. 9.6(6)(K). Defs.' Mem. [ECF No. 36-1 at 7].   However, the parties have submitted evidence that raises a question of fact about the specific date that Plaintiff received the Level-1 Grievance.   Plaintiff's Level-2 Grievance dated November 26, 2019 calls into question Plaintiff's averment that he received his Level-1 disposition on November 27, 2019, but the Court declines to resolve a credibility issue on a motion for summary judgment. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 2017) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.").

Nevertheless, the record demonstrates that Plaintiff has failed to exhaust his administrative remedies by satisfying all the steps set forth under 9.6 prior to filing his complaint as required by the PLRA.   As the United States Supreme Court explained in *Woodford*, 548 U.S. at 90 (citation and internal quotation marks omitted):

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive

16

for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).

Here, even assuming that Plaintiff's Level-2 Grievance dated November 26, 2019 was timely filed and sufficed to exhaust his administrative remedies as noted on the grievance, Plaintiff did not receive this disposition until February 14, 2020, more than two months after Plaintiff filed the instant matter in federal court on December 2, 2019. Pl.'s ex. A, Mason Aff. [ECF No. 45-2 at 1]. An untimely response to his Level-2 Grievance does not salvage his claim. A detainee must file a Level-3 grievance of the District Administrator's failure to dispose of the Level-2 Grievance in a timely manner within 35 days of the filing of the Level-2 Grievance. *See* A.D. 9.6(6)(M). Plaintiff has presented no evidence that he filed a Level-3 Grievance of the failure to dispose of his Level-2 Grievance within the 35 days required. Thus, Plaintiff's Fourteenth Amendment excessive force claim against Officer Cruz must be dismissed because Plaintiff failed to exhaust his administrative remedies before filing this action. Accordingly, Defendants' motion for summary judgment on Count One against Officer Cruz is GRANTED.

The Court pauses briefly to note that Acting District Administrator Sharonda Carlos' statement to Plaintiff that he "exhausted his administrative remedies" is of no moment for three reasons. First, that statement was made, as noted, on March 5, 2020, more than three months *after* Plaintiff filed this action.

17

*See Neal v. Goord*, 267 F.3d at 122 ("Subsequent exhaustion after suit is filed therefore is insufficient.").  Second, it has been established that a bald statement from a prison official to an inmate that he has exhausted his administrative remedies is not dispositive if the inmate has not, in fact, done so.  *Riles*, 656 F. App'x at 580-81 (affirming district court's dismissal based on inmate's failure to exhaust his claim despite him being "assured by DOC staff that the assault would be investigated, leading him to reasonably believe that his verbal complaint resolved the issue such that no written request was required.").  Finally, having failed to file his grievance timely, Plaintiff exhausted by waiver his available administrative remedies.

**B.**   **Fourteenth Amendment Violations**

Plaintiff's claims with regard to his disciplinary hearing and administrative segregation raise procedural and substantive due process concerns.  Plaintiff alleges that Defendants Warden McCormick, Counselor Supervisor Tugie, Director of Classification Maiga, and Deputy Commissioner Quiros placed him in administrative segregation after his September 27, 2019 hearing without due process of law.  [ECF No. 1 ¶ 52].  Similarly, he alleges due process violations against Defendants Leone and Betances in connection with his October 9, 2019 disciplinary hearing based on introduction of allegedly false information and failure to properly review the evidence.  *Id.* ¶ 61.  He alleges that Defendants Warden McCormick, Counselor Supervisor Tugie, Director of Classification

18

Maiga, and Deputy Commissioner Quiros placed him in extremely harsh conditions of confinement in violation of his Fourteenth Amendment rights. Compl. [ECF No. 1 ¶ 58].  Finally, Plaintiff also asserts violation of his right to equal protection under the Fourteenth Amendment Equal Protection Clause by imposing harsh conditions of confinement that were not imposed on other similarly situated individuals.  *Id.* ¶ 58.

Defendants argue that Plaintiff cannot demonstrate any violation of the Fourteenth Amendment as a matter of law.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts."  *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).  To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

A.    Fourteenth Amendment Due Process

19

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend. XIV, § 1.   A Fourteenth Amendment due process claim can be either procedural or substantive.   While procedural due process prohibits deprivations of life, liberty or property without constitutionally adequate procedures, substantive due process protects these substantive rights "no matter the process employed by the State."   *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017).

1.      Procedural Due Process

Although a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," Plaintiff may challenge his guilty finding on his Disciplinary Report on a claim that he was deprived of procedural due process in violation of the Fourteenth Amendment.  *See Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015); *Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012) (noting inmate must show something more than false charges, such as deprivation of procedural due process during the disciplinary hearing).

A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State

**20**

were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison setting, liberty interests protected by due process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). However, *Sandin* does not apply to pretrial detainees, and therefore, a pretrial detainee need not prove that the conditions under which he was confined exposed him to atypical and significant hardships in order to demonstrate a liberty interest requiring procedural due process protection. *Eckert v. Grady*, No. 3:19-cv-00982 (VAB), 2020 WL 3129478, at *8 (D. Conn. June 12, 2020) (pretrial detainee need not prove that the conditions under which he was confined exposed him to atypical and significant hardships in order to demonstrate a liberty interest requiring procedural due process protection) (citing *Benjamin v. Fraser*, 264 F.3d 175, 188–89 (2d Cir. 2001)).

If there is a liberty interest, the court considers whether the prisoner received the proper process due to him. When evaluating the processes used in prison disciplinary and administrative decision making, courts must be "mindful of the context in which th[e] case arises" and "the deference we owe prison officials in carrying out their daily tasks." *Proctor v. LeClaire*, 846 F.3d 597, 608-

09 (2d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)).   On a procedural due process claim, the court evaluates only the procedures used for the hearing officer to reach his decision.   *Id.* at 608.   The level of procedural protection required depends on the purpose of the hearing.   *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).

For a disciplinary confinement, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken."   *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).   Further, due process requires that "disciplinary determinations be supported by some 'reliable evidence' of guilt."   *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).   "[A] prison inmate facing a disciplinary hearing is only entitled to assistance from a fellow inmate or a prison employee under certain circumstances."   *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988) (citing *Wolff*, 418 U.S. at 570).   A prisoner who is illiterate, confined in a restrictive housing unit, transferred to another correctional institution, or unable to grasp the complex nature of the issues may be entitled to an assigned advocate to assist him in preparing for the hearing.   *Id.* (citing *Wolff*, 418 U.S. at 570).   When an inmate has been "afforded a

22

fair opportunity to refute" disciplinary charges, an allegation that such charges were false cannot support a procedural due process claim.  *See Livingston v. Kelly,* 423 F. App'x 37, 40 (2d Cir. 2011).

If, however, the proceeding is administrative, the detainee "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation."  *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).   If a pretrial detainee's placement in restrictive housing is reasonably related to a legitimate governmental purpose, it is not considered punitive.  *Almighty Supreme Being Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017).  In *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons.

a.   Disciplinary Hearing

Defendants assert that Plaintiff received all the process he was due for his disciplinary hearing.  Defs.' Mem. [ECF No. 36-1 at 10-11].  The record before the Court shows that Plaintiff received the process due under *Wolff*.[4]

i.   Notice of Disciplinary Charge

---

[4] The Court notes that Plaintiff does not contest that he was provided with an advisor or that he had the opportunity to contest the charge at the hearing through the presentation of his own statement, witnesses, and evidence.

"In a prison disciplinary proceeding, '[d]ue process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing.'" *Elder*, 967 F.3d at 124 (quoting *Sira*, 380 F.3d at 70).  The notice must permit a "reasonable person" to "understand what conduct is at issue so that he may identify relevant evidence and present a defense." *Id.* (quoting *Sira,* 380 F.3d at 72).

Plaintiff does not dispute that he received the Disciplinary Report on September 15, 2019, which charged him with Assault on a DOC employee involving an incident where Plaintiff punched Correction Officer Cruz that same day.  Defs.' Rule 56(a) Stmt. [ECF No. 36-6 ¶ 8]; Defs.' ex. C, Betances declar. [ECF No. 36-4 at 7].  The Disciplinary Report issued by Defendant Cruz described the incident with sufficient information for a reasonable person to understand the conduct at issue.  Although the notice did not include the hearing date, the Court notes that Plaintiff received notice of his charges well in advance of the hearing on October 9, 2019.  Accordingly, the Court will grant the motion for summary judgment on this aspect of Plaintiff's due process claim.

ii.    Evidentiary Support for Guilty Finding and Impartial DHO

Plaintiff asserts that his written statement of reasons indicated that his guilty finding was based on the false claim that he had no injuries.  Pl.'s Local Rule 56(a) Stmt.  The due process requirement is satisfied if a plaintiff receives a written statement of reasons that explains what evidence supported a disciplinary

determination.  *See Sira,* 380 F.3d at 74.  A written statement should "afford[ ] the inmate a reasonable opportunity to explain his actions and to alert officials to possible defects and evidence."  *Id.*  The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985).  "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.*  The Second Circuit, however, has explained that courts should not "construe[ ] the phrase 'any evidence' literally." *Elder*, 967 F.3d at 129 (quoting *Luna*, 356 F.3d at 488).  Rather, a disciplinary determination must be supported by "some 'reliable evidence' of guilt."  *Id. (*quoting *Luna*, 356 F.3d at 488).  "Due process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion."  *Id.* at 129-30 (quoting *Sira*, 380 F.3d at 80).

Upon review of the record, the Court concludes that the "some evidence" standard is satisfied.  The Disciplinary Summary Report indicates that the guilty finding was based on review of the incident and medical reports that provided that Correction Officer Cruz had sustained "injuries consistent with being punched" while Plaintiff was noted as having no injuries.  Defs.' ex. C, Betances declar. [ECF No. 36-4 at 6].  Plaintiff has submitted medical reports showing that

he sustained some injury of "mandible pain" and "noted mild swelling" and was provided with Motrin.  Pl.'s aff., ex. B [ECF No. 45-2 at 13].  However, Hearing Officer Betances' decision still reflects a review of the totality of facts and circumstances that reasonably supports the conclusion that Plaintiff punched Officer Cruz and was therefore guilty of the disciplinary charge.  *See Elder*, 967 F. 3d at 129-30.  Because Plaintiff has not raised an inference that the decision was not based on substantial evidence or that he lacked an impartial hearing officer, the Court will grant the motion for summary judgment in Defendants' favor on this ground.

      b.    Administrative Segregation Hearing

Plaintiff asserts that he was deprived of due process with respect to his Administrative Placement.  Plaintiff maintains that he was placed in Administrative Segregation on October 8, 2019, prior to be being found guilty after a hearing on his disciplinary charge.  Pl.'s Additional Material Facts [ECF No. 5-1 ¶ 3].

Placement of an inmate on Administrative Segregation Status is "at the discretion of the Director of Offender Classification and Population Management[,]" but an inmate "shall not be placed in Administrative Segregation Status without notice and a hearing" before an Administrative Segregation Hearing Officer who must "examine evidence to support the classification including the inmate's and/or any witness statements."  A.D. 9.4(12)(A)-(B).  The

written notice of the hearing and the reasons for the hearing must be provided to the inmate at a minimum of two business days prior to the hearing by utilizing a CN 9402, Notification of Hearing.   A.D. 9.4(12)(C).   Generally, classification determinations fall within the category of non-punitive administrative proceedings subject to the less stringent due process standard under *Hewitt*. *See Hemingway v. Whidden*, No. 3:19-cv-01457 (VAB), 2020 WL 5820596, at *6 (D. Conn. Sept. 30, 2020) ("Where the inmate's detention in restrictive confinement is administrative in nature, such as Security Risk Group classification, his confinement is assessed under the standard in *Hewitt*[.]"); *Valdez v. City of New York*, No. 11 Civ. 05194 (PAC) (DF), 2013 WL 8642169, at *8 (S.D.N.Y. Sept. 3, 2013), *report and recommendation adopted*, 2014 WL 2767201 (S.D.N.Y. June 17, 2014).   Here, the record shows that Plaintiff was afforded procedural due process that satisfies both the standards under *Wolff* and *Hewitt*.

The notice of the Administrative Hearing that Plaintiff admits to receiving on September 24, 2019 provides sufficient information that Plaintiff was being reviewed for a higher level of security due to his criminal history, his pending criminal charges for, *inter alia*, Assault on a Public Safety Officer, Strangulation, Possession of Pistol/Revolver, Risk of Injury to a Child, and Home Invasion, in addition to his recent disciplinary charges asserting his assault on Officer Cruz on September 15, 2019.  Pl.'s ex. A [ECF No. 45-2 at 29].  The notice also stated that the purpose of the hearing was to "determine whether your presence in the

general population presents a threat to the safety and security of the institutional community due to repetitive disciplinary infractions and/or involvement in a serious incident." *Id.* The Court concludes that this notice is sufficient to satisfy due process standards.

Plaintiff does not dispute that he received a hearing; presented his opposition to the placement; had the opportunity to present his own statement, witnesses, and evidence; and was provided with the written notice of the decision and his right to appeal that decision. *See* Pl.'s Rule 56(a) Stmt. ¶¶ 13-15, 17 [ECF No. 45-1]. Nor does he claim that he was deprived of an opportunity to have an advisor for the hearing. Hearing Officer Tugie gave the stated reason for Plaintiff's Administrative Segregation placement as being "authorized due to direct/intentional assault on a DOC employee." Tugie declar. [ECF No. 36-5 at 49]. Because there is some reliable evidence in the record to support the conclusion that Plaintiff physically assaulted Officer Cruz, the Court concludes that entry of summary judgment on this claim is appropriate. Plaintiff has not sustained his burden of showing a violation of the due process standards.

2.   **Substantive Due Process**[5]

Plaintiff alleges that his administrative segregation at Northern imposed severe and harsh conditions of confinement, which are designed to be punitive.

_____

[5]"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl,*

[ECF No. 1 ¶ 39].  Pretrial detainees have a liberty interest in not being punished by the conditions of their pretrial confinement.  *Wolfish*, 441 U.S. at 535 ("Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law").  "A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether ... by deliberate indifference to conditions of confinement, or otherwise."  *Darnell v. Pineiro,* 849 F.3d 17, 35 (2d Cir. 2017).  A pretrial detainee can state a substantive due process claim by showing that the defendants were deliberately indifferent to the conditions of his confinement or he can show that the conditions were punitive.  *Id.* at 34 n.12.  Defendants argue that Plaintiff cannot show any substantive due process violations because Plaintiff's placement in Administrative Segregation was not arbitrary, the conditions of Administrative Segregation serve legitimate penological purposes, and Defendants did not act with deliberate indifference.

Plaintiff alleges that the Administrative Segregation conditions were more restrictive than general population confinement and included, *inter alia*, isolation; deprivation of social interaction and recreation; 23- to 24-hour cell confinement; one social call per week; one thirty-minute visit per week with a family member; inadequate ventilation; faulty plumbing; deprivation of access to information such as news; three showers a week; and inadequate food.  [ECF No. 1 ¶ 39].  He claims other special circumstances individuals housed at Northern are not

20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted).

subjected to these conditions of confinement and have two hours of recreation; showers every day; meals in group settings; and visits and phone calls equal to the general population. *Id.* at ¶ 40. The Court must consider whether entry of summary judgment is appropriate on Plaintiff's substantive due process claims based on punitive conditions or deliberate indifference to his inhumane conditions of confinement.

      a.   Restrictive Punitive Conditions

A pretrial detainee's placement in restrictive housing that is reasonably related to a legitimate governmental purpose is not considered punitive. *Milling*, 876 F.3d at 55. However, the Second Circuit explained that prison officials violate substantive due process when they "adhere[] reflexively to a practice" to place a pretrial detainee in administrative segregation without "individualized consideration of [the plaintiff's] circumstances" and "regardless of [the pretrial detainee's] actual threat, if any, to institutional security." *Id.* at 57. Here, the record demonstrates that Plaintiff's Administrative Segregation Program placement was determined through an individualized consideration of Plaintiff's circumstances and the charges against him of assault on a DOC employee. Plaintiff has not adduced evidence showing that the placement decision was arbitrary or not reasonably related to the legitimate purpose of protecting against a safety threat posed by Plaintiff's demonstrative proclivities.

Even if Plaintiff, as a pretrial detainee, has been properly placed in the Administrative Segregation program, he may still raise a substantive due process claim based on the imposed Administrative Segregation conditions, "which must be reasonably related to a legitimate government purpose, such as institutional security." *Wilson v. Santiago*, No. 3:19-cv-01807 (JAM), 2020 WL 5947322, at *4 (D. Conn. Oct. 7, 2020) (citing *Milling*, 876 F.3d at 55). In *Milling*, "[t]he Second Circuit raised questions about whether certain conditions 'were reasonably related to the ostensible goal of prison security,' including solitary confinement for 23 hours per day, showering in leg irons and wet underwear, no programming or counseling therapy, and strict limits on visits, phone calls, and mail." *Wilson*, 2020 WL 5947322, at *4 (quoting *Milling*, 876 F.3d at 58).

"[I]n assessing whether restrictions on pretrial detainees comport with substantive due process, 'a court must decide whether the restriction is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Bell*, 441 U.S. at 538). "Absent proof of intent to punish, 'that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'" *Id.* (quoting *Bell*, 441 U.S. at 538). It is well settled that "the government has a legitimate interest in the security of prisons, and that prison officials should be afforded deference in the adoption

and execution of policies and practices ... needed to preserve internal order and discipline and to maintain institutional security." *Milling*, 876 F.3d at 55. Additional objectives that could justify the imposition of restrictive conditions on pretrial detainees include "mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is detained." *Bell*, 441 U.S. at 540.

DOC Administrative Directive 9.4 and Attachment A/1 set forth that the Administrative Segregation Program comprises three phases and that an inmate's progression through phases is "contingent upon successful completion of specific program components in accordance with unit policies." A.D.9.4(12)(G) [ECF No. 42-3 at 9]; Attachment A/1 [ECF No. 42-4]. In support of their argument that the restrictive Administrative Segregation conditions serve legitimate penological interests, Defendants have provided the declaration of Director of Offender Classification and Population Maiga, who represents that the objectives of restrictive conditions are "to deter problematic inmates," "motivate better behavior by providing incentives to progress out of the restrictive conditions," and that inmate property and movement are restricted "to make it easier for correctional staff to provide security." Maiga declar. [ECF No. 42-2 at 4]. Plaintiff refutes the Defendants' assertion of penological justifications for the restrictive Administrative Segregation conditions by asserting that his 23-hour confinement in a cell alone constitutes punishment, and he appears to indicate that this

condition is not important to safe-keeping of the prisoners.  Pl.'s Mem. [ECF No.

45-1 at 11].  However, courts "'ordinarily defer to [the] expert judgment' of prison

officials 'in the absence of substantial evidence in the record to indicate that the

officials have exaggerated their response' to administrative considerations.  [I]f a

particular condition or restriction of pretrial detention is reasonably related to a

legitimate governmental objective, it does not, without more, amount to

'punishment.'"  *Cabral v. Strada*, 513 F. App'x 99, 101 (2d Cir. 2013) (quoting *Bell*,

441 U.S. at 538-39).  Here, the record raises no inference that the Administrative

Segregation Program's restrictions are excessive or not rationally related to the

asserted legitimate prison security and correctional objectives.  Accordingly, the

Court will grant the motion for summary judgment in Defendants' favor on

Plaintiff's substantive due process claim based on restrictive conditions.

      b.    Deliberate Indifference

      Plaintiff may also assert that Defendants were deliberately indifferent to his

conditions of confinement.  To state a claim for deliberate indifference under

either the Eighth or Fourteenth Amendment, Plaintiff must satisfy an objective

element by showing the challenged "conditions, either alone or in combination,

pose an unreasonable risk of serious damage to his health, which includes the

risk of serious damage to physical and mental soundness."  *Darnell*, 849 F.3d at

30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).  "[T]he conditions

themselves must be evaluated in light of contemporary standards of decency."

*Id.* (citation and internal quotation marks omitted).  This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey*, 801 F.3d at 68).  Conditions are also considered in combination where one combines with another to affect one identifiable human need.  *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Darnell*, 849 F.3d at 32 ("the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another.").  Under the second element for a Fourteenth Amendment claim, "the *mens rea* prong, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Id.*

Defendants maintain that Plaintiff's complaints about his conditions of unsanitary plumbing conditions, food deprivations, and lack of ventilation are baseless, and that Plaintiff never complained about his conditions posing serious risk of harm to his health or wellbeing.  Defs.' Mem. [ECF No. 42 at 4-5]; Chevalier declar. [ECF No. 42-5 ¶ 4].  In response, Plaintiff has submitted an inmate request to non-defendant Unit Manager Chevalier dated December 4, 2019 and a Level-1 Grievance dated December 17, 2019, complaining about violation of his due process rights due to his long-term isolation and harsh conditions in the Administrative Segregation Program.  Pl. ex. [ECF No. 45-1 at 1-3].  In his federal

34

complaint, Plaintiff alleges that he told Hearing Officer Tugie he should not be placed in long-term punitive administrative segregation.  [ECF No. 1 ¶ 35], and that he appealed his Administrative Segregation placement but that Quiros denied his appeal.  *Id.* at 47.  However, Plaintiff has not provided any evidentiary support showing that he had made any Defendants aware of conditions posing a risk of serious harm to him, and the record evidence fails to indicate that Defendants knew, or should have known, that Plaintiff was subjected to a risk of serious harm due to his conditions of confinement.  The Court notes that Plaintiff's attached Administrative Segregation appeal complains about his erroneous classification but provides no information about his conditions of confinement posing a risk of harm to his health and wellbeing.  *See* Admin. Seg. Appeal [ECF No. 45-2 at 25-26].  Accordingly, the Court will grant the motion for summary judgment in Defendants' favor because no reasonable jury could find based on the record that Defendants acted with the *mens rea* required for a Fourteenth Amendment deliberate indifference claim.

B.   Fourteenth Amendment Equal Protection

Plaintiff alleges Defendants violated his right to equal protection under the Fourteenth Amendment Equal Protection Clause by imposing harsh conditions of confinement that were not imposed on other similarly situated individuals.  [ECF No. 1 ¶ 58].

35

The Fourteenth Amendment Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, §1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).  Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right.  *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted).

When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals are treated the same as "similarly situated individuals."  *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012).  Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of

similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain*." Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Plaintiff has not alleged a membership in a suspect classification because prisoners in general are not a suspect class. *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012). Thus, Plaintiff is proceeding under a "class of one" theory. Plaintiff asserts that other special circumstances inmates were housed at Northern in his same housing unit but were not subjected to the same conditions as they were permitted all of their property, a minimum of two hours recreation each day, showers each day, meals in group settings, and the same amount of visits and telephone calls as the general population. Pl.'s Mem. [ECF No. 45-1 at 13-14]. However, Plaintiff has not made any demonstration that he and these special circumstances inmates are similar to such a high degree that no rational basis exists for the alleged difference in treatment between Plaintiff and the certain other special circumstances inmates. *See Gray v. Bansley / Anthony /*

37

*Burdo LLC*, No. 3:19-cv-01869 (KAD), 2020 WL 292230, at *5 (D. Conn. Jan. 21, 2020) (dismissing class-of-one equal protection claim where plaintiff's allegations failed to show an extremely high degree of similarity so as to suggest an inference that no rational basis existed for differential treatment).

     As no reasonable jury could find that Defendants violated Plaintiff's equal protection rights based on the record evidence, the motion for summary judgment must be granted on this claim.

### IV. Conclusion

     For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment [ECF No. 36] on the complaint in its entirety.  The clerk is instructed to close this case and enter judgment for Defendants.


_____/s/_____
Vanessa L. Bryant
United States District Judge


     SO ORDERED at Hartford, Connecticut this 19th day of May, 2021.